## IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

MARGARET RYAN,          )
                                    )
        Plaintiff,        )
    v.                       )      C.A. No. CPU6-14-000130
                                    )
PATRICIA J. LEWIS,       )
                                    )
        Defendant,     )

Submitted June 24, 2014
Decided July 18, 2014

*Patrick Scanlon, Esquire, counsel for Plaintiff*
*William B. Wilgus, Esquire, counsel for Defendant*

## DECISION AFTER TRIAL

In this action to collect on an alleged debt, the Court is called upon to determine whether Defendant is in default for non-payment of a promissory note. Following the June 17, 2014 bench trial, the Court reserved decision and requested the parties to submit briefs as to whether the Court may imply a reasonable time for performance under the circumstances of the case. This is the Court's decision following a review of the relevant law and evidence presented by the parties.

1

## FACTUAL BACKGROUND

On June 17, 2014, the Court held a bench trial regarding this action filed by Margaret Ryan ("Plaintiff") against Patricia Lewis ("Defendant"). Per the February 14, 2014 Complaint, Defendant is in default for non-payment of the Promissory Note ("Note") signed by the parties and notarized on July 6, 2011. The Note indicates that Defendant owes Plaintiff $29,000.00 in repayment of a loan that Defendant used to purchase a mobile home located at Rehoboth Bay Park in Rehoboth Beach, Delaware. At trial, Defendant admitted that she owes $29,000.00 to Plaintiff. As of the date of trial, Defendant has not made any payments on the Note. Per the Complaint, Plaintiff requests the Court to award her $27,000.00 in damages[1] with costs, fees, post-judgment interest at the legal rate and attorney's fees[2].

The parties are two women of advanced age who have known each other for approximately twenty years. Plaintiff loaned Defendant the money to purchase the Rehoboth Beach mobile home because Defendant wanted to reside to Delaware, but could not afford to purchase a residence without financial assistance. On July 6, 2011,

---

[1] The Complaint prays for $27,000.00 in relief. The sum of $30,000.00 is typewritten in the Note as the amount owed. That amount is crossed out and replaced by the sum of $29,000.00 which is initialed by each party. *See* Plaintiff's "Exhibit 1". At trial, Plaintiff testified that she changed the amount owed to $27,000.00, but does not remember when this occurred or her reason for doing so. *See* Plaintiff's "Exhibit 2". Noting the error as to the damage request immediately before trial, Plaintiff motioned to amend the Complaint to reflect the damage amount as stated in the Note prior to Plaintiff's unilateral amendments. Defendant objected to the motion. The Court denied Plaintiff's motion as untimely because Plaintiff had ample time between the filing of the Complaint and the date of trial to amend the Complaint.

[2] "If the indebtedness evidenced by this Promissory Note is collected by or through an attorney, the Holder shall be entitled to recover reasonable attorney's fees to the extent permitted by applicable law." *See* Plaintiff's "Exhibit 1".

2

the parties signed a Note which states, in pertinent part, that "[this] loan and promissory note is to purchase a 1987 single wide Schult trailet [sic]...The [sic] Patricia J. Lewis shall pay a lum [sic] sum of the loan upon selling of [sic] her property in Surfside, Myrtle Beach, North Carolina, S.C.".[3] Upon executing the agreement, both parties were aware that the South Carolina property was on the market and the property would be sold in the normal course of business. The parties were also aware that the property was marketable and that Defendant had accepted an offer shortly before the execution of the loan, however, that sale later fell through.

Two months after the execution of the agreement, Defendant took the South Carolina property off the market because other homes in the area were not selling quickly.[4] Defendant has not relisted the property since that time. Rather, Defendant has leased out and collected rental income on the property since approximately September, 2011.

Thereafter, Defendant sold the mobile home in Rehoboth Beach for $29,000.00, the amount Plaintiff loaned her to purchase the property. Defendant, moved into an apartment in Rehoboth Beach and used the proceeds of the sale to pay for her living expenses and repairs to her commercial properties in Pennsylvania.

---

[3] *See* Plaintiff's "Exhibit 2".

[4] At trial, Marla DiBattista, Plaintiff's friend and an acquaintance of Defendant, testified that she overheard Defendant explain to Plaintiff when and why she took the South Carolina property off the market. On cross-examination, Defendant was repeatedly asked when she took the South Carolina property off the market. Defendant's answers were non-responsive. The Court finds Ms. DiBattista's testimony credible and gives no weight to Defendant's testimony on this issue.

3

In July, 2012, Defendant and her home owners' association were named as Defendants in a personal injury action for an injury that allegedly occurred at the South Carolina residence.[5] Defendant testified that she was advised not to list the property for sale during the pendency of the lawsuit. As of the date of trial, the lawsuit is still pending and Defendant has not listed or sold the South Carolina residence.

## DISCUSSION

To prevail on a breach of contract claim, a plaintiff must prove three (3) elements by a preponderance of the evidence:

> (1) the existence of a contract, whether express or implied;
>
> (2) the breach of an obligation imposed by the contract; and
>
> (3) resultant damage to the plaintiff.[6]

In this case, there is no dispute that the parties entered into a contract.[7] Thus, the issues presented to this Court are: (1) whether Defendant satisfactorily performed her duties under the contract, and (2) if Defendant breached her contractual duties, whether Plaintiff is owed any damages.

At trial, Plaintiff argued that the time for performance was not expressly stated in the contract and, therefore, the Court could infer a reasonable time for performance.

---

[5] *See* Defendant's "Exhibit 1".

[6] *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[7] "It is a common sense rule that promissory notes are a variety of contract and are to be so construed and enforced." *Beal Bank, SSB v. Lucks*, 791 A.2d 752, 757 fn. 13 (Del. Ch. 2000) (citations and quotations omitted).

Defendant argued that the condition triggering Defendant's obligation to pay has not yet occurred and, therefore, Defendant has not yet breached the agreement. Defendant further argued that the Court may not review extrinsic evidence in deciding whether Defendant has breached because the contract is unambiguous as to Defendant's contractual obligations.

After a review of the law, the Court finds Defendant's argument unpersuasive. Defendant maintained exclusive control over the sale of the South Carolina residence which is the condition preceding Defendant's obligation to repay the loan. In other words, Defendant suggests that satisfaction of this condition is at her convenience.

In cases where the contract is silent as to the time for performance and in cases where satisfaction of the contractual obligations is at the convenience of one of the parties, the law allows the trial court to infer a reasonable time for performance. "If a contract does not include a performance date, courts will imply that performance must occur within a reasonable time."[8] Additionally, "a contract to make payment at the convenience of the debtor does not necessarily mean that payment need never be made, if not convenient."[9] "The law considers such a contract to mean that payment should be made after a reasonable time."[10] "What constitutes a reasonable time is determined on a case-by-case basis.[11]

---

[8] *Good v. Moyer*, 2012 WL 4857367, at *4 (Del. Super. Oct. 10, 2012) (Cooch, R.J.) (citations omitted).
[9] *Malafronti v. Turoczy*, 1991 WL 215660, at *3 (Del. Super. April 22, 1991) (Herlihy, J.) (citations omitted).
[10] *See id.*
[11] *See Good*, 2012 WL 4857367, at *4.

5

The Court also takes instruction from the Superior Court's decision in *Ray v. Harris* which states, in pertinent part:

> The Court's role in reviewing contracts is to ascertain the shared intention of the parties. Generally, contracts are to be read as a whole, and are assumed to be self-contained. If the language of the contract is "clear and unambiguous" the ordinary meaning of the words and terms govern the parties' intent. The presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities that have engaged in arms-length negotiations. Parties are considered "sophisticated" entities and businesspeople when, for example, they are extensively experienced in their industry and have ample access to counsel.
>
> However, in the last twenty years, several Delaware Supreme Court decisions strongly suggest a trend toward allowing leniency in the traditionally strict rules of contract interpretation in some situations. Delaware has abandoned the usual "four corners" of the contract approach for the modern view where extrinsic evidence is imperative to contract interpretation because the primary search is for the common meaning of the parties, not one imposed by law, and the meaning of words used in an agreement can only be known through an appreciation of the context and circumstances in which they were used.[12]

In this case, as in *Ray, supra,* the agreement was contemplated and drafted by unsophisticated parties using sparse language that is suggestive of outside contexts.[13] Moreover, the Note memorializes a loan from one elderly friend to another without the aid of counsel.[14] Given these facts and the absence of a contract provision expressly stating the time for performance, the Court may look beyond "the four corners" of the

---

[12] *Ray v. Harris*, 2008 WL 10208, at *3-4 (Del. Super. Feb. 26, 2008)(Witham, R.J.)
[13] *See id.*
[14] *See id.*

6

Note and consider evidence of the circumstances and context of the agreement to determine the parties' intent as to a reasonable time for performance.[15]

On July 6, 2011, the parties signed the Note which states, in pertinent part, that "[this] loan and promissory note is to purchase a 1987 single wide Schult trailet [sic]…The [sic] Patricia J. Lewis shall pay a lum [sic] sum of the loan upon selling of [sic] her property in Surfside, Myrtle Beach, ~~North Carolina~~, S.C.".[16] At the time of execution, it was the parties' understanding that the South Carolina residence was marketable and would be sold in the ordinary course of business. In fact, Defendant had accepted an offer prior to the signing of the Note.

The Court finds that, at the time of contracting, the parties did not contemplate that Defendant would take the South Carolina property off the market two months after the execution of the agreement and thereafter collect rental income on the property or that Defendant would sell the Rehoboth Beach mobile home and use the proceeds to fund her living expenses and repair her investment properties. The Court further finds that the parties did not intend that Defendant would postpone payment for three years because she was advised to relist the South Carolina property only after termination of the personal injury suit. Moreover, no evidence was presented to the Court to demonstrate that Defendant could not, by statute or otherwise, relist and sell the

---

[15] "[S]hould the Court construe the provisions in question to be silent on the time of performance of the condition, then, the law would presume performance of the condition was intended within a reasonable time. The evidence of the oral agreement would then be evidence of what the parties considered would be a reasonable time for performance of the condition." *Gluckman v. Holzman*, 51 A.2d 487, 491 (1947).
[16] *See* Plaintiff's "Exhibit 2".

7

property. Clearly, Defendant controls when she sells the South Carolina property and, therefore, mistakenly believes that payment may be postponed indefinitely.

The law presumes that performance is intended within a reasonable time. It does not imply that Defendant may repay the loan when it suits her or otherwise permit Defendant to hold her contractual obligations hostage for several years. Defendant must complete her obligations within a reasonable time. Given the facts as stated above, the reasonable time as intended by the parties has passed. Therefore, the Court finds that Defendant has breached her duty to make timely payment. Plaintiff is entitled to damages in the requested amount of $27,000.00.

## CONCLUSION

The Court enters judgment in favor of the Plaintiff, Margaret Ryan, for $27,000.00 against the Defendant, Patricia Lewis, with costs, fees, post-judgment interest at the legal rate and reasonable attorney's fees. Plaintiff's counsel shall have thirty (30) days to submit an affidavit regarding his fees.

**IT IS SO ORDERED**, this _18_ day of July, 2014.

The Honorable Rosemary Betts Beauregard

8